(No. 19684.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH JORDAN *et al.* Plaintiffs in Error.

*Opinion filed December 20, 1929.*

STEIDLEY & STEIDLEY, for plaintiffs in error.

Oscar E. Carlstrom, Attorney General, Eugene Bland, State's Attorney, and George P. O'Brien, for the People.

Mr. Justice Dunn delivered the opinion of the court:

At the November term, 1928, of the circuit court of Shelby county the grand jury returned an indictment against Irwin Spicer, Ralph Jordan and Lee Banning, charging Spicer with the larceny of an automobile and Jordan and Banning with being guilty as accessories after the fact. Spicer pleaded guilty and was sentenced to imprisonment in the Southern Illinois Penitentiary. Jordan and Banning pleaded not guilty, the cause was continued until the March term, when it was tried, and they were found guilty and sentenced according to law. They then sued out this writ of error.

Although the assignments of error question the action of the court in receiving and rejecting evidence and giving instructions, these assignments have not been argued and the cause has been submitted upon the question of the sufficiency of the evidence to sustain the verdict.

No question is made of the guilt of Spicer. He stole the Buick sedan of Aubrey L. Yantis after eight o'clock in the evening of Saturday, August 4, 1928, from the place where it was parked at the Shelbyville Chautauqua. Banning lived in, and Jordan near, the village of Westervelt, and on that evening they had gone to Tower Hill in Jordan's Dodge car. They saw Spicer there in the stolen car. He inquired of them about Hazel Curry, a young woman who lived in Shelbyville, and they told him they had not seen her. They then went in Jordan's car to Shelbyville, where they next saw Spicer in the alley back of Miss Curry's home, on North Chestnut street, sitting in the stolen sedan with Miss Curry and her mother. Hazel Curry was

nineteen years old and had been acquainted with both Jordan and Banning about a year. On the night when the car was stolen she went alone "down to Tony Cohoon's" (not otherwise described in the record) about six-thirty o'clock and first saw Spicer there several hours later. Her mother and her two sisters came home from Tower Hill with Spicer in the car. She rode home with them in the car. She first saw Jordan and Banning that evening when they drove up to the alley where she was sitting with her mother and Spicer in the Buick sedan. Banning testified that he asked Spicer where he got his new car, and he said his father had just bought it and let him drive it and if we had some gas we would go out riding. Hazel Curry testified that Spicer said he was about out of gas, and one of the plaintiffs in error said they would go and get some. They went, as she remembered, on foot, brought the gasoline in a red can and put it in the sedan. Banning testified that he and Jordan went in the Dodge car to the filling station and bought and paid for five gallons of gasoline. Carr, the operator of the station, testified that they were walking, as he remembered, and one of them said the boys did not want to come down on the street for fear their father might see them, and Jordan and Banning took the gasoline, which they put in the Buick. They all then started in the Buick car, stopping at the Main street school building, about a block from the filling station, while Jordan took the can back to the filling station. He testified that he told Carr, the operator of the filling station, that "the fellow that has the car said he didn't want to drive it down here—he was afraid his dad would see him." He then returned to the car and Spicer drove it to Tower Hill—Spicer and Miss Curry on the front seat and the plaintiffs in error on the back seat. They looked for some girls, but not finding them did not stay long,— probably twenty minutes,—and they then drove on west on Route 16. Nothing was said about where they were going until they got out of Pana. Spicer then said, "Let's go to

St. Louis." Jordan said, "All right; I have a brother-in-law out there." They drove to St. Louis to Jordan's brother-in-law's, Spicer driving most of the way and Ralph Jordan part of the time. They stayed in St. Louis until about twelve o'clock the next day and then started home in the Buick sedan. It was dark when they reached Shelbyville. The plaintiffs in error got out of the car in front of Paul Williams' house, on Third street. Miss Curry heard no conversation at that time except that Spicer said, "Don't say anything about it." Jordan drove the car back from St. Louis.

It is the law, as contended by the plaintiffs in error, that to convict one as an accessory after the fact to the commission of a felony it must be shown that a felony was committed, that the accessory had knowledge of the guilt of the felon, and the felon must have been harbored, concealed, maintained or assisted by the accused.

There is no doubt that Spicer committed a felony as charged in the indictment. It must be conceded that the plaintiffs in error furnished him the gasoline by the use of which he removed himself and the stolen car from the jurisdiction, but on the question of the knowledge of the plaintiffs in error that he had stolen the car the evidence is insufficient to justify the verdict. The plaintiffs in error were acquainted with Spicer. No particular degree of intimacy of association with him is shown except as appears from this one transaction. If there were any circumstances which should have rendered improbable to them his explanation of his possession of the car on that Saturday evening they do not appear in the evidence. The larceny and the conduct of the thief are inexplicable. Having stolen the car and got away with it as far as Tower Hill he deliberately took Mrs. Curry and her two daughters into the car and drove back with them to Shelbyville, where the car was stolen, and went to Tony Cohoon's, where he found the third daughter of Mrs. Curry and drove to their home with them. He was

sitting at ease in the automobile in the alley, talking with Mrs. Curry and her youngest daughter, when the plaintiffs in error came to Mrs. Curry's. Why the plaintiffs in error went to Mrs. Curry's is not suggested. If they knew or suspected that the car was stolen it hardly seems probable that they would have gone back to Mrs. Curry's, in the town where the larceny occurred, to look for the thief or the car. There is nothing in this action indicating knowledge of the theft, nor does any reason appear why the plaintiffs in error should not have accepted as true Spicer's statement that his father had just bought the car and let him drive it. When Spicer suggested that if he had some gas they would go riding, it was not unnatural that the plaintiffs in error should volunteer to go to the filling station and get the gasoline. Their statement to the operator of the station that the boy who had the car did not want to come down to the station because he was afraid his father would see him is a suspicious circumstance, but of itself it cannot be held to be evidence that they knew of the theft of the car. The going off on a drive to Tower Hill near midnight to pick up some girls, and, not finding them, the night drive to St. Louis, were unreasonable acts, but they do not indicate that the plaintiffs in error thought they were riding in a stolen car and assisting the thief to escape. They went to the house of the brother-in-law of one of the plaintiffs in error and after being there for six hours turned around and came back to Shelbyville. Their return does not indicate that they knew that the car was stolen or that they were trying to help the thief to escape. As far as the plaintiffs in error are concerned, the evidence fails to show, beyond a reasonable doubt, that they have been guilty of any violation of the criminal law. The whole escapade was indiscreet, foolish and silly, a breach of propriety, lacking in common sense, but it is not shown by the evidence to have been a breach of the criminal law. There may be suspicion

of guilt, but the suspicion is not sufficient to justify a conviction of the offense with which the plaintiffs in error were charged.

The judgment is reversed.     *Judgment reversed.*