**Dennis L. OLSON, Plaintiff-Appellant,**

v.

**Robert TYLER and O.J. Foster,
Defendants-Appellees.**

No. 83–2644.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 5, 1984.
Decided Aug. 21, 1985.

Helen Zoellner Kelly, Donald J. Harman, Ltd., LaCrosse, Wis., for plaintiff-appellant.

William T. Curran, Curran, Curran & Hollenbeck, Mauston, Wis., for defendants-appellees.

Before CUMMINGS, Chief Judge, WOOD and ESCHBACH, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

In this 42 U.S.C. § 1983 action claiming deprivation of rights secured by the fourth, fifth, and fourteenth amendments, plaintiff-appellant Olson appeals from the district court's grant of summary judgment in favor of defendant Tyler, Chief of Police of the City of Elroy, located in Juneau County, Wisconsin, and defendant Foster, Chief of Police of the City of Mauston, also located in Juneau County.

The district court's grant of summary judgment to Tyler and Foster was based on its conclusion that Olson had failed to state a claim for which relief can be granted. While the record contains affidavits of the parties, the court did not consider them in reaching its determination. Our review will accordingly be confined to the question whether Olson has stated a claim for which relief can be granted, and we hold that he has. We express no opinion as to whether summary judgment in favor of one or both defendants might be appropriate on the basis of the factual record made in the proceedings below.

I.

The allegations of Olson's complaint, which were undisputed by defendants except as noted herein, may be briefly summarized. In March, 1982, Tyler and Foster began a cooperative undercover drug investigation. Linda Jorgenson was employed as an informant and paid $50.00 for each drug purchase she made. Also in March, 1982, Olson was arrested in Monroe County, Wisconsin, for speeding and operating a motor vehicle without a license. He pleaded guilty to the charges, and was sentenced to a ten-day jail term to commence on June 16, 1982, and to be served in the Monroe County jail, located in Sparta, Wisconsin, approximately 40 miles from Elroy where he lived.

During the month of June, Olson was employed as a bartender at Kaz's Bar in Elroy and as a laborer with his father's construction company, also located in Elroy. After his Monroe County arrest but prior to June 16, Olson contacted Tyler to determine whether he could serve his jail sentence in the Juneau County jail as he had been granted Huber Law privileges,[1] and desired to continue working for his father during the ten-day period of confinement. Tyler advised Olson that he would attempt to make such an arrangement. On June 16, when Olson began serving his sentence in the Monroe County jail, Olson's mother telephoned Tyler, at Olson's request, to ask whether Tyler had made arrangements for Olson to serve the sentence in the Juneau County jail. Tyler told Mrs. Olson that he would check it out. Mrs. Olson then telephoned the Monroe County jail. She spoke with an officer who informed her that only the sentencing judge had the authority to permit service of the sentence in another county's jail. In a subsequent telephone conversation, Mrs. Olson relayed this information to Tyler, who responded, "I guess we learn something new everyday." Olson served the ten-day sentence in the Monroe County jail, not exercising his Huber Law privileges.

---

**1.** Under the Huber Law, persons serving county jail sentences may be eligible for work release privileges. *See* Wis.Stat.Ann. § 56.08 (West 1984).

On June 19, 1982, police informant Jorgenson informed Tyler that she had purchased some hashish from Olson in Kaz's Bar at approximately 6:30 p.m. that evening. On the basis of this information, Tyler signed a criminal complaint against Olson. Following the signing of the complaint, the district attorney procured a warrant for Olson's arrest from Judge Wallace Brady on August 4, 1982. Olson was arrested on August 6, 1982, after service of his Monroe County sentence, and held in the Juneau County jail until August 9, 1982, when he was released on a signature bond. At a preliminary hearing held on August 11, 1982, Jorgenson could not identify Olson as the person who had sold her the hashish at Kaz's Bar, and the charges were dismissed.

Olson's section 1983 suit against Tyler, Foster, and a number of other defendants, whose dismissal from this action is not challenged on appeal, claimed a violation of his fourth amendment right to be free from unreasonable seizures, a denial of equal protection,[2] and a deprivation of liberty without due process of law. Olson alleged that Tyler and Foster knew or should have known that he was incarcerated in the Monroe County jail at the time he allegedly purchased hashish from the informant, and that therefore no probable cause existed for his arrest.[3] Tyler and Foster dispute this allegation, but concede it for the purpose of appeal.

In its memorandum order the district court did not mention Olson's fourth amendment claim at all, apparently viewing it as abandoned.[4] The court based its grant of summary judgment entirely on Olson's claim to have been deprived of liberty without due process. The court found that to the extent that this case can be distinguished from *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), because defendants were responsible for the mistaken identity, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), was dispositive. The availability of adequate state tort remedies for false arrest, false imprisonment, and malicious prosecution led the district court to conclude that Olson was not deprived of his liberty without due process of law.

## II.

We believe that Olson intended to assert a claim that his arrest was unlawful under the fourth amendment, as made applicable to the states through the fourteenth amendment, and that he did not abandon or waive that claim. Consequently, we begin our analysis with the question whether the facts as alleged in the complaint would support such a claim.

■ An arrest is not unlawful merely because the information on which it was based is later determined to be inaccurate. *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1984). That defendants' informant mistakenly identified Olson as the person from whom she purchased the hashish, standing alone, does not render the arrest illegal. But Olson has alleged, and defendants have conceded for the purpose of disposing of this appeal, that defendants knew or should have known that he was incarcerated at the time of the alleged drug trans-

---

**2.** Olson's equal protection claim, that he was dealt with arbitrarily, is not expounded on appeal. It is essentially a rephrasing of his fourth amendment claim. *See McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir.1984).

**3.** Olson alleged that defendants Tyler and Foster were required to and did exchange information about persons under investigation for drug-related activities and that defendants were required to and did exchange information concerning Olson's whereabouts on June 19, 1982, the date he was alleged to have sold hashish to informant Jorgenson. Foster contends that he was not in any way involved in Olson's arrest.

Our opinion is not intended to foreclose Foster's asserted defense.

**4.** In an earlier order granting judgment on the pleadings to a codefendant, the district court stated:

The complaint also mentions the Fourth Amendment, a contention the court understands to concern the arrest of plaintiff. However, in his brief plaintiff concedes that the warrant was facially valid, and further states that the due process clause is the source of his complaint.

action. Because defendants had probable cause to believe that Olson had sold the hashish to the informant only if they had no reason to know that the informant's identification of Olson was mistaken, they have effectively conceded that they had no reasonable belief that Olson had committed the crime charged. In the posture in which this case comes to us, then, it is not a case of simple mistaken identity. Rather, this is a case in which the information provided to the judge, itself sufficient to establish probable cause, was not reasonably believed by defendants to be true. We must determine whether defendants may be held liable under section 1983 for such misconduct in the procurement of a facially valid warrant.

■ When a police officer, acting in good faith, obtains a warrant and acts within its scope, he has engaged in no official misconduct; it is the magistrate's responsibility to determine whether the officer's allegations constitute probable cause and it is the magistrate's error if the arrest is later determined to have been unlawful. In such a case, the magistrate's issuance of the warrant shields the officer from liability for the illegal arrest. It is one exception to this general rule with which we are concerned here. A warrant does not erect an impenetrable barrier to impeachment of a warrant affidavit. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1977). If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth [5] and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the

illegal arrest, but he cannot be said to have acted in an objectively reasonable manner.[6]

■ That a facially valid warrant will immunize only the officer who acted in an objectively reasonable manner in securing it is a principle that has been embraced by a number of courts in section 1983 actions. *Briggs v. Malley*, 748 F.2d 715, 721 (1st Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 2654, 86 L.Ed.2d 271 (1985); *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir.1979); *Guerro v. Mulhearn*, 498 F.2d 1249, 1256 (1st Cir.1974); *Farmer v. Lawson*, 510 F.Supp. 91, 95–96 (N.D.Ga.1981). The good faith immunity doctrine shields officers from liability if their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is clearly established that the fourth amendment requires a truthful factual showing sufficient to constitute probable cause. *Franks*, 438 U.S. at 164, 98 S.Ct. at 2680. The information in a warrant affidavit must be truthful in the sense that it is believed to be true or appropriately accepted as true by the affiant. *Id.* at 165, 98 S.Ct. at 2681. An officer's conduct in preparing a warrant affidavit that contains only inaccurate statements that are untruthful as that term is defined in *Franks* violates the arrestee's fourth amendment rights. In such a case, a reasonably well-trained police officer would have known that the arrest was illegal.

■ Our conclusion is supported by *United States v. Leon*, —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), in which the Court announced a good faith exception to the exclusionary rule that shields against suppression if the officer's reliance

---

5. The *Franks* rationale applies with equal force where police officers secure a warrant through the intentional or reckless *omission* of material facts. *See United States v. Dorfman*, 542 F.Supp. 345, 367 (N.D.Ill.1982), *aff'd sub nom. United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985).

6. True, we are dealing here with an allegedly illegal arrest which may be remedied only in a civil action. Although *Franks* arose in the context of a motion to suppress evidence seized pursuant to a search warrant, we believe there is no principled basis for finding its reasoning inapplicable to arrest warrants. The misconduct of the officer is the same; only the remedy differs.

on the magistrate's determination of probable case was objectively reasonable. Under the good faith exception, suppression remains an appropriate remedy if an officer was dishonest or reckless in preparing a warrant affidavit. *Id.* 104 S.Ct. at 3421 (citing *Franks*). In such a case, the officer's reliance on the warrant to effect the search was not objectively reasonable. The Court's adoption of the *Harlow* objective reasonableness standard in the suppression context suggests that "in all cases in which [the] 'good faith' exception to the exclusionary rule would operate, there will also be immunity from civil damages." 104 S.Ct. at 3456 n. 35 (Stevens, J., dissenting). At least one court of appeals has so held. *Briggs,* 748 F.2d 715. We believe that the following converse proposition is also true: in cases in which suppression would be warranted because an officer was dishonest or reckless in preparing a warrant affidavit, that officer would not enjoy good faith immunity for civil damages.

In formulating the good faith inquiry as "whether a reasonably well-trained officer would have known that the search was illegal *despite the magistrate's authorization,"* *Leon,* 104 S.Ct. at 3421 n. 23 (emphasis added), the Court has made clear that misconduct in the procurement of a warrant is not cured by the magistrate's acceptance of the warrant affidavit. We see no room for argument in a section 1983 suit that the magistrate's action nevertheless immunizes the defendant officer who cannot be said to have acted in objective good faith vis-a-vis the innocent arrestee. We hold therefore that judicial approval of a warrant affidavit cannot serve as an absolute bar to the section 1983 liability of the officer who submitted it. Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to good faith immunity.

## III.

Olson also has claimed that defendants, in effecting his arrest and detention, deprived him of his liberty without due process of law. Olson clearly was deprived of his liberty in the most traditional sense of the word. And we believe he has adequately alleged that the deprivation was effected without due process of law. When an individual is deprived of his liberty pursuant to a warrant that does not conform to the requirements of the fourth amendment, he is deprived of liberty without due process of law. *Baker,* 443 U.S. at 143–44, 99 S.Ct. at 2694. By virtue of its incorporation into the fourteenth amendment, the fourth amendment, which defines "the 'process that is due' for seizures of person or property in criminal cases," requires the states to provide a fair and reliable determination of probable cause by a judicial officer either before or shortly after arrest. *Gerstein v. Pugh,* 420 U.S. 103, 125 & n. 27, 95 S.Ct. 854, 868 & n. 27, 43 L.Ed.2d 54 (1975). As we have made clear, a finding of probable cause based solely upon information known by the affiant to be false or supplied by the affiant in reckless disregard of the truth is not a fair and reliable determination of probable cause.

The availability of state tort remedies does not negate Olson's contention that the deprivation of his liberty was effected without due process of law. *Parratt* has no application to alleged violations of substantive constitutional proscriptions that are binding upon the states through incorporation into the due process clause of the fourteenth amendment. 451 U.S. at 536, 101 S.Ct. at 1913 (citations omitted); *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 872 (7th Cir.1983).

## IV.

We express no opinion on possible defenses to Olson's claims. We hold only that under the circumstances summary judgment in defendants' favor was inappropriate.

**REVERSED AND REMANDED.**