**Laura Ann JURISS, Plaintiff–Appellee,**

v.

**Paul McGOWAN and Russell Stanfield, jointly and severally, Defendants–Appellants.**

**No. 91–1141.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1991.

Decided Feb. 24, 1992.

John H. Otto, (argued), Zimmerly, Gadau, Selin & Otto, Champaign, Ill., for plaintiff-appellee.

Randall Ray, (argued), Sebat, Swanson, Banks, Garman & Townsley, Danville, Ill., for defendants-appellants.

Before COFFEY and FLAUM, Circuit Judges, and ENGEL, Senior Circuit Judge.*

FLAUM, Circuit Judge.

Laura Ann Juriss sued the Village of Grant Park, its police chief Russell Stanfield, and part-time police officer Paul McGowan for damages under 42 U.S.C. § 1983. Juriss alleged that Stanfield and McGowan, and through them the village, violated her fourth amendment rights by arresting her without probable cause (i.e., false arrest), and further by executing the arrest with excessive force. The district court granted summary judgment to the village on all counts, and to the officers on the excessive force count. The court denied the officers' request for summary judgment on the false arrest count, finding that McGowan did not enjoy absolute immunity and that neither officer enjoyed qualified immunity as to that claim. Here,

the officers take an interlocutory appeal, as is McGowan's right under *Nixon v. Fitzgerald*, 457 U.S. 731, 741–43, 102 S.Ct. 2690, 2696–98, 73 L.Ed.2d 349 (1982), and both officers' right under *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985). We affirm.

## I.

The incidents giving rise to this case occurred in Grant Park, Illinois, a small village in Kankakee County. Because the officers moved for summary judgment, we review the evidence in the light most favorable to Juriss and draw all inferences to her benefit. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987).

Juriss, a resident of Grant Park, waited tables at the L & K Restaurant, a local hangout situated across the street from the village police station, and the locus of many events significant to this case. Although Juriss was divorced from Eddie Beach, she sometimes invited him to her apartment for visits of varying durations. Beach, however, was inclined to overstay his welcome, and Juriss occasionally had to call the Grant Park police to oust him when he would refuse to leave. Still, for reasons not explored in the record, Juriss again invited Beach to her home sometime prior to October 3, 1987. On that date Juriss again asked Beach to leave, and again he refused. Juriss then walked over to the L & K, spotted officer McGowan, and sought his assistance in expelling her ex-husband.

Juriss and McGowan returned to the apartment, and McGowan told Beach to get out. The two men exchanged words and began scuffling when McGowan tried to handcuff Beach. Beach eventually broke free, ran out the door and fled down the street. The police tried but failed to apprehend Beach after his escape. About a week later a grand jury in Kankakee County, after hearing testimony from McGowan, indicted Beach for aggravated battery and escape, and a warrant was issued for his

* The Honorable Albert J. Engel, United States Court of Appeals for the Sixth Circuit, sitting by designation.

arrest. At this point Beach became a fugitive from justice—although, importantly, neither he nor anyone else (except those involved in procuring the indictment) knew it because the arrest warrant was placed under seal and otherwise shielded from the public eye.

Despite the secrecy surrounding Beach's indictment and arrest warrant, word of the Beach–McGowan altercation spread, and speculation arose as to what would happen next. About a month or two later, Brenda Bacon, a co-worker and close friend of Juriss, told officer McGowan at the L & K that she hoped the police would arrest Beach the next time he came to town. (Bacon was angry at Beach for reasons not relevant to this action.) McGowan, however, kept the sealed arrest warrant under wraps, and told her that Beach was not wanted. This is significant, for McGowan told police chief Stanfield about Bacon's inquiry and his evasive response, and Stanfield approved. For her part, Bacon told Juriss that there was no outstanding warrant for Beach's arrest, and Juriss passed this information on to Beach.

Beach returned to Juriss' apartment (presumably with her acquiescence) on December 12, 1987. As luck would have it, McGowan was driving by Juriss' building when Beach was about to enter; McGowan parked the car, set up surveillance, and called Stanfield. Stanfield arrived about an hour later with officer Volpe (who is not a party to this action), and later that evening the three officers decided to apprehend Beach pursuant to the sealed warrant. Volpe and McGowan approached the front door of Juriss' apartment, and Stanfield went to watch the side entrance.

McGowan knocked on the door and requested entry on behalf of himself and Volpe. He told Juriss, who had partially opened the door, that they had come to get Eddie Beach, and that they knew Beach was there because his car was parked in the driveway; Juriss answered that the car belonged to Beach's father, not to Beach. McGowan requested entry but Juriss refused; she maintains (now, but did not tell the officers then) that she needed a few seconds to dress because she was not fully clothed. After McGowan threatened to arrest Juriss for obstruction, she let the officers in and they arrested Beach without incident. At no point prior to gaining entry did McGowan or Volpe tell Juriss that they had a warrant for Beach's arrest.

A couple of days later Kankakee County prosecutors, after speaking with McGowan and Stanfield, decided to seek an indictment against Juriss for aiding a fugitive in violation of § 31–5 of the Illinois Criminal Code. Subsequently, on December 17, McGowan and Stanfield recounted the story of Beach's arrest while taking an afternoon break at the L & K. They asked Bacon, who was waiting tables at the time, what Juriss told her about the events immediately preceding Beach's arrest. Here the testimony diverges. Bacon maintains that she told the officers that Juriss had told her (Bacon) that the colloquy at Juriss' door prior to Beach's arrest proceeded as described above. Bacon's account was confirmed by Phillip Liard, a part-time student and journalist, who overheard Bacon's conversation with the officers from another table. McGowan and Stanfield, however, recall things differently. They contend that Bacon told them that Juriss had told her (Bacon) that she (Juriss) had tried to delay the police to give Beach a chance to escape through her (Juriss') side door. Stanfield put his version of the conversation with Bacon in a police report.

On December 18, McGowan once again appeared before the Kankakee County grand jury, this time for the purpose of indicting Juriss. He testified that Juriss, while speaking to him at her apartment door, had told him that Beach was not in her apartment. (Juriss maintains that she merely told them that the car to which he referred belonged to Beach's father, not to Beach.) McGowan also testified that he believed that Juriss was harboring and concealing Beach, and that she knew Beach was wanted by the police. Finally, he gave what is essentially Stanfield's version of the conversation both officers had with Bacon the preceding afternoon at the L & K. The grand jury indicted Juriss for aiding a

fugitive and a warrant was issued for her arrest.

Stanfield, McGowan and another officer then went to the L & K, ordered drinks, and, about an hour later, arrested Juriss. The county prosecutors dropped their case against Juriss approximately two months later when Beach pled guilty to one of the counts against him. Christine Moriarty, an assistant state's attorney in the Kankakee County office, subsequently stated that Juriss was indicted and arrested in large part to induce a guilty plea from Beach. Juriss filed suit thereafter. On appeal we must decide whether the district court erred in denying McGowan absolute immunity and both officers qualified immunity as to Juriss' false arrest claim.

## II.

■ *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), provides that a witness at trial has absolute immunity from suit under § 1983 for giving false testimony damaging to a subject of that testimony. We extended *Briscoe* to immunize grand jury witnesses in *Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.) (per curiam), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983). McGowan contends that *Kincaid* absolute immunity extends to his arrest of Juriss because his immune grand jury testimony directly lead to the arrest. We take him to mean the following: McGowan would not have arrested Juriss but for the indictment returned by the grand jury, and the grand jury would not have indicted Juriss but for McGowan's testimony. McGowan is absolutely immune for his grand jury testimony. Since that testimony was the "proximate cause" (McGowan's phrase) of Juriss' arrest, he also is absolutely immune for the arrest.

This reasoning is flawed. Juriss sued McGowan for false arrest, not for lying to the grand jury. (We accept, for the purpose of reviewing the officers' motion for summary judgment, Juriss' allegation that McGowan actually lied to the grand jury about Juriss' actions immediately prior to Beach's arrest. At trial, the trier of fact

may of course choose to credit McGowan's account.) The fact that his grand jury testimony caused the subsequent arrest is irrelevant, because testifying and arresting are two independent acts. Absolute immunity is granted with an eye to the function performed by the sued official, not to the status or identity of that official. *Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991); *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Briscoe*, 460 U.S. at 342, 103 S.Ct. at 1119. As such, *Briscoe* emphasized that subjecting public officials to § 1983 liability for their trial testimony "might undermine ... their contribution to the judicial process," *Briscoe*, 460 U.S. at 343, 103 S.Ct. at 1119, and *Kincaid* found that the same concerns apply in the grand jury context. *Kincaid*, 712 F.2d at 1024. Although McGowan's immune testimony certainly lead to his arrest of Juriss, he was not participating as a witness in a judicial proceeding when he executed the arrest. Since *Kincaid* applies only to McGowan's acts in front of the grand jury, it is inapposite to the false arrest count. *Millspaugh v. County Dep't of Public Welfare of Wabash County*, 937 F.2d 1172, 1175–76 (7th Cir.1991); *see also Burns*, 111 S.Ct. at 1943. The focus here is not on what McGowan said in the past, but rather on what he knew and did at the time he executed the arrest warrant—a warrant that happened to have issued from the indictment returned by the grand jury that McGowan himself allegedly mislead. If McGowan has any immunity at all for his arrest of Juriss, it is qualified, not absolute.

## III.

■ Whether McGowan is protected by qualified immunity depends upon the "objective legal reasonableness" of the arrest. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). The relevant inquiry is whether a reasonable officer could have believed the arrest was constitutional "in light of

clearly established law and the information [McGowan] possessed" at the time of the arrest. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40. *Harlow* made this inquiry a purely objective one; McGowan's subjective intent and beliefs regarding the validity of the arrest are irrelevant. *Harlow*, 457 U.S. at 815–20, 102 S.Ct. at 2736–39; *Millspaugh*, 937 F.2d at 1176; *Mark v. Furay*, 769 F.2d 1266, 1268 (7th Cir.1985).

■ McGowan offers two alternative arguments to support his qualified immunity defense. The first is that officers of reasonable competence, detached from an emotional standpoint but knowing everything McGowan knew at the time of arrest, could have disagreed on whether there was probable cause for Juriss' arrest. *See Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986).[1] Evaluating the merits of this argument entails a bifurcated look at McGowan's mental state; we must ascertain the facts of which he was aware, but it is beside the point whether he believed those facts added up to probable cause. *See Auriemma v. Rice*, 910 F.2d 1449, 1452–53 (7th Cir.1990) (en banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

■ The Illinois Criminal Code provides that Juriss committed the crime of aiding a fugitive if she (1) harbored, aided or concealed an offender, (2) with the knowledge that the offender committed a crime and was wanted by the authorities, and (3) with the intent of preventing the offender's apprehension. Ill.Ann.Stat. ch. 38, ¶ 31–5

(1977).[2] McGowan argues that, under all of the circumstances, a reasonable officer could have concluded that Juriss knew that Beach was a wanted man. In support, he contends that Juriss was present during the Beach–McGowan altercation, that two uniformed police officers later arrived at her apartment asking for Beach, that the police would not be seeking Beach but for the existence of a warrant, and that Juriss had no reason to deny that Beach was present other than her knowledge that he was about to be arrested. We cannot agree with his contention. To begin with, Juriss did not (exactly) deny that Beach was in the apartment; she just stated, in response to McGowan's observation that he knew Beach's car was parked outside, that the car belonged to Beach's father, not to Beach. That the officers were in uniform while on duty is not very significant, as on-duty officers customarily wear uniforms. While it was unlikely that, in light of Beach's prior entanglements with the law, the officers were there to pay a social visit, Juriss could easily have concluded that they merely wanted to speak with Beach about the altercation or an entirely unrelated matter.

It is, however, unnecessary to decide whether the facts recited by McGowan, taken alone, could have lead a reasonable officer to conclude that Juriss knew Beach was a fugitive, because other facts in the record would have naturally led one to the opposite conclusion. The officers, after knocking on Juriss' door, did not tell Juriss that they were there to arrest Beach or that they had a warrant to that effect,

---

**1.** It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir.1989); *Mark*, 769 F.2d at 1268–69. This preclusion does not arise from the doctrine of qualified immunity, but rather from the fact that a person arrested with probable cause cannot cry false arrest. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (arrest supported by probable cause satisfies the fourth amendment). And without a predicate constitutional violation, one cannot make out a prima facie case under § 1983. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979). Because McGowan rests his defense solely on grounds of immunity, we do not understand him to assert

that he actually had probable cause to believe that Juriss had committed the crime of aiding a fugitive. *See* Chemerinsky, *Federal Jurisdiction* § 8.6.1, at 406 (1989) ("immunities are a defense to liability, not an element of the plaintiff's prima facie case").

**2.** The statute expressly includes only the first and third elements. However, the Committee Comments explain that "it would seem factually impossible to commit the offense 'with the intent to prevent the apprehension of the offender' without knowing the fact that a crime has been committed." Ill.Ann.Stat. ch. 38, ¶ 31–5 (1977) (Committee Comments).

leaving Juriss to infer that this was their purpose. The chance that she would make such an inference was diminished by the fact that Beach's arrest warrant was placed under seal; only the police (and the Kankakee County prosecutors and grand jurors) knew that Beach was a fugitive. Indeed, McGowan went so far as to tell Bacon that Beach was not wanted by the authorities, and would likely have known that Bacon would relay this information to Juriss, her friend, co-worker and certainly an interested party. McGowan also allegedly mislead the grand jury when he testified—contrary to the independent accounts of Bacon and Liard—that Bacon told him and Stanfield that Juriss told her (Bacon) that Juriss had tried to delay the officers at her (Juriss') apartment door to allow Beach to escape.

Where would this leave a reasonable officer standing in McGowan's shoes at the time he arrested Juriss? The officer would have known that McGowan and Volpe did not announce that they sought Beach's arrest when they arrived at Juriss' apartment, that Juriss was under the impression that Beach was not a fugitive from justice, and that McGowan mislead (according to Juriss and Bacon) the grand jury about the events immediately preceding Beach's arrest. We do not use the allegation that McGowan perjured himself as evidence of an illicit motive, or that he thought there was no probable cause, but only as additional evidence available to the reasonable officer in making his probable cause determination; someone standing in McGowan's shoes would have further reason to doubt that probable cause existed if he knew that McGowan felt it necessary to commit perjury in order to procure Juriss' indictment (which required that the grand jury find probable cause). Based upon all relevant circumstances, then, we determine that a reasonable officer could not have concluded that Juriss knew Beach was a fugitive or intended to aid a fugitive, and hence that she had violated ¶ 31–5. *See People v. Jordan,* 337 Ill. 422, 169 N.E. 205 (1929).

■ In the alternative, McGowan contends that his possession of a facially valid warrant for Juriss' arrest shields him from liability despite his knowledge that it was issued without probable cause.[3] This provides the factual foundation for his second argument for qualified immunity: under the "state of the law" at the time of the arrest, *Elliott v. Thomas,* 937 F.2d 338, 341 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992), it was not "clearly established" that the fourth amendment forbade an officer from executing a facially valid arrest warrant when he knew that the warrant was not supported by probable cause. In evaluating this argument, we examine whether the right McGowan allegedly violated was "clearly established in a particularized sense." *Cleveland–Perdue v. Brutsche,* 881 F.2d 427, 430 (7th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 368, 112 L.Ed.2d 331 (1990). This does not mean that McGowan prevails "unless the very action in question ha[d] been previously held unlawful." *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Rather, it means that qualified immunity is inappropriate if, in light of the law in effect in December 1987, a reasonable officer would have known that the particular action at issue (executing a facially valid arrest warrant with the knowledge that there was no probable cause to arrest) was unlawful. *Id.*

We believe that pre-existing law made it clear that this action violated the fourth amendment. Generally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest; this is so even if the arrest warrant is later determined to have an inadequate factual foundation. *Baker v. McCollan,* 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979); *Mark,* 769 F.2d at 1268. There was (and still is), however, a recognized exception for situations where officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause; this is par-

---

**3.** We take McGowan's brief to concede that he possessed this knowledge for the purposes of this argument.

ticularly true of officers who knew that those who obtained the warrant had deceived the authorizing body. *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir.1985). Under these circumstances, even a facially valid arrest warrant does not shield otherwise unreasonable conduct.

McGowan points out that *Malley* and *Olson* involved officers who *procured* arrest warrants through fraudulent means (by lying to a magistrate, which, unlike lying to a grand jury, is not absolutely immune from § 1983 damages), not those who *executed* arrest warrants they knew had been fraudulently procured. We find this distinction unconvincing. A reasonable officer at the time could not have concluded from these two cases that the law frowns upon those who secure warrants through deceit but not upon those who execute them with full knowledge of that deceit.[4] The principle underlying *Olson* applies with equal force to both situations:

> Where the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the fourth amendment, but the officer will not be entitled to good faith immunity.

*Olson*, 771 F.2d at 282.

Our analysis is buttressed by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Leon* held that the fruits of a search executed pursuant to a facially valid search warrant are admissible in a criminal trial even if the warrant is later found to be invalid, but carved an exception if a reasonable officer executing the search "would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n. 23. The Supreme Court subsequently held that the suppression standard in *Leon* defines the qualified immunity standard for officers sued under § 1983 for false arrest.

*Malley*, 475 U.S. at 344–45, 106 S.Ct. at 1097–98; *see also Olson*, 771 F.2d at 282. While one could argue that *Leon* involved search warrants and the case at hand involves arrest warrants, but this distinction is as spurious as the one advanced by McGowan above. *See Malley*, 475 U.S. at 344 n. 6, 106 S.Ct. at 1097 n. 6. In sum, a reasonable officer would have known in December 1987 that the fourth amendment forbade the execution of a facially valid arrest if the officer knew that the warrant was not supported by probable cause. McGowan is therefore not entitled to qualified immunity for Juriss' false arrest count. The possibility that he also fraudulently procured the arrest warrant by lying to the grand jury is serendipitous; what matters is that McGowan knew the warrant was groundless when he executed it.

## IV.

Finally, we consider whether police chief Stanfield is entitled to qualified immunity. He advances the same two grounds as did McGowan; this fact, however, does not necessarily doom Stanfield's claim, for he played a different role than McGowan in the events leading up to Juriss' arrest.

■ First, Stanfield is qualifiedly immune if a reasonable officer knowing what *he* knew would have believed that there was probable cause to arrest Juriss. *Jones*, 856 F.2d at 994. Of course, if Stanfield knew everything McGowan knew he is no more entitled to qualified immunity than McGowan. Stanfield contends that he knew less; unlike McGowan, Stanfield was not present during McGowan's colloquy with Juriss at her apartment door prior to Beach's arrest (he was watching a side entrance), was not in the grand jury room when McGowan allegedly perjured himself, and submitted an affidavit disclaiming all knowledge of McGowan's perjury. He maintains that the "most significant" knowledge he had at the time of the arrest was that Juriss had been indicted and that an arrest warrant had been issued. If this

---

**4.** Subsequent cases have made this explicit. *See, e.g., Jones*, 856 F.2d at 994 (applying *Malley* standard to arresting officer); *Bennett v. City of* *Grand Prairie*, 883 F.2d 400, 408 (5th Cir.1989) (same).

were the *only* information Stanfield possessed, he would enjoy qualified immunity. *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (police officers executing arrest warrants "are entitled to assume that the officers [who procured the warrant] offered the magistrate the information requisite to support an independent judicial assessment of probable cause").

Juriss, however, maintains that Stanfield knew more than he lets on, and in fact was fully aware of McGowan's ruse. (Again, *Auriemma,* 910 F.2d at 1452–53, teaches that inquiring into *this* aspect of Stanfield's mental state remains proper under *Harlow* and *Anderson.*) Juriss' own suspicions or unsupported allegations are insufficient to raise an issue of material fact as to the knowledge at Stanfield's disposal; rather, she must produce " 'specific, nonconclusory factual allegations' " establishing the necessary mental state to stave off summary judgment. *Elliott,* 937 F.2d at 344–45 (quoting *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1795, 114 L.Ed.2d 277 (1991) (Kennedy, J., concurring)). Direct evidence is not required; it is sufficient that enough circumstantial evidence exist to permit a jury to infer that Stanfield had the requisite knowledge. *Id.*

The mere fact that Stanfield was McGowan's superior does not satisfy this standard. *See Jones,* 856 F.2d at 992 (superiors' liability not recognized under § 1983). Nor does Juriss' insinuation in the district court, wisely abandoned here, that McGowan, a part-time police officer, would not have committed perjury without first clearing it with Stanfield. However, Juriss' allegation (confirmed by Bacon and journalist Liard) that Stanfield, like McGowan, lied about his conversation with Bacon at the L & K, and his subsequent filing of a police report recounting his version thereof, provide enough evidence for the jury to infer that he was in league with McGowan. *See id.* at 993 (even in the absence of direct evidence, jury could infer that superiors who "sign[ed] a deceitful report for use by the prosecution" knew of false steps taken by subordinates). Moreover, the fact that McGowan told Stanfield that McGowan concealed from Bacon infor-

mation regarding Beach's indictment and arrest warrant also tends to show that Stanfield knew as much as McGowan about Juriss' probable awareness of Beach's fugitive status (or lack thereof) when the police came to arrest Beach. There is nothing sinister about keeping a sealed arrest warrant under wraps; in fact, Stanfield's knowledge and approval of McGowan's evasion was entirely proper. However, it also goes to show that someone in Stanfield's shoes would have had reason to doubt that anyone not involved in procuring Beach's indictment was aware that Beach was a fugitive.

In our view Juriss has produced enough "specific, nonconclusory factual allegations" to support her contention that Stanfield possessed the same information as McGowan. We therefore reject his first argument for qualified immunity. His second argument—that it was not clearly established that the fourth amendment prohibits an officer from executing a facially valid arrest warrant when he knows that the warrant was not supported by probable cause—falls for the reasons discussed above.

\* \* \* \* \* \*

The fact that we affirm the district court's decision to deny McGowan and Stanfield immunity in no way portends our view of the merits. It is possible that the officers, rather than Bacon and Liard, truthfully recounted their conversation with Bacon at the L & K. Perhaps McGowan's recollection of the events at Juriss' door prior to Beach's arrest was accurate. In like manner, it is possible Stanfield had no knowledge of McGowan's false testimony, and therefore justifiably relied upon what McGowan told him prior to Juriss' arrest. But these are largely questions of credibility that only a trier of fact can resolve.

AFFIRMED.