Thomas PHELAN

v.

Robert THOMPSON, et al.

No. C–94–104–L.

United States District Court,
D. New Hampshire.

Dec. 7, 1994.

Robert J. Foley, Plymouth, NH, Charles H. Riley, Jr., Boston, MA, for plaintiff.

K. William Clauson, Hanover, NH, Donald E. Gardner, Manchester, NH, for defendants.

## ORDER

LOUGHLIN, Senior District Judge.

Presently before the court is the Motion for Summary Judgment of defendant Robert Thompson.

*Background*

This case arises out of the November 21, 1992, arrest of plaintiff Thomas Phelan by defendant Robert Thompson, police chief for the Town of Rumney, New Hampshire. Plaintiff was charged with the class A felony of being an armed career criminal in possession of a firearm pursuant to N.H.Rev.Stat. Ann. § 159:3–a. Bail was originally set at $100,000. The arrest warrant issued by the Plymouth District Court was issued upon a sworn affidavit of the defendant. On November 23, 1992, a complaint issued from the Plymouth District Court charging plaintiff with violation of RSA 159:3–a. On December 19, 1992, plaintiff was indicted on the same charge by a grand jury in North Haverhill, Grafton County, New Hampshire. On January 15, 1993, plaintiff was arraigned on the indictment and bail was increased to $250,000.00.

From November 23, 1992 until May 3, 1993, plaintiff was incarcerated in the New Hampshire State Prison. Prior to his release, an investigation was conducted by the Grafton County District Attorney into the alleged criminal activity of plaintiff. Subsequent to this investigation on April 20, 1993, plaintiff's bond was reduced to $10,000.00 unsecured. On May 3, 1993 the indictment against plaintiff was dismissed and plaintiff was discharged from prison.

Plaintiff brings the present action pursuant to 42 U.S.C. § 1983, alleging that defendant knew his statements contained in the affidavit used in obtaining the arrest warrant from Plymouth District Court were false and that at the time he was arrested, defendant knew that plaintiff had not committed the crime alleged. Plaintiff claims that as a result of defendant's statements (i) bail was set at $100,000 and later increased to $250,000 and (ii) the indictment was returned solely on that untruthful testimony of defendant. Plaintiff contends defendant's conduct deprived plaintiff of his rights as secured by the First, Fifth and Fourteenth Amendments to the United States Constitution.

*Discussion*

■ Summary judgment under Fed. R.Civ.P. 56(c) is proper only if, viewing the record in the light most favorable to the non-

moving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). "Only disputes over facts that might effect the outcome of the suit" are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.; Oliver*, 846 F.2d at 105. The moving party initially must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. Fed. R.Civ.P. 56(e); *Oliver*, 846 F.2d at 105.

Defendant moves for summary judgment asking this court to find as a matter of law that (i) plaintiff was in violation of RSA 159:3–a; (ii) as to any alleged misconduct in the preparation of the original arrest affidavit, defendant is entitled to the defense of qualified immunity which bars plaintiff's claims against him; (iii) there is no causal link between plaintiff's arrest and defendant's alleged misconduct as the findings of probable cause by the Plymouth District Court and Grafton County Grand Jury are intervening causes; (iv) defendant's testimony before the Grand Jury and at plaintiff's arraignment is subject to absolute immunity; and, (v) defendant did not testify at plaintiff's arraignment.

## I) *RSA 159:3–a*

RSA 159:3–a entitled "Armed Career Criminals", provides for criminal liability for who one has been convicted of 3 or more felonies and owned or had in his possession or control a firearm. Defendant contends plaintiff's criminal records reveal plaintiff had been convicted of four prior felonies, thereby satisfying the 3 felony requirement of RSA 159:3–a. The record reveals, and plaintiff admits, that he has been convicted of

four felonies in Massachusetts and Florida: larceny from a building and larceny of a controlled substance in Massachusetts, and burglary and escape in Florida. Both parties agree that the Florida burglary and the Massachusetts larceny of a controlled substance may be considered felonies under RSA 159:3–a and that the escape charge may not be.

The parties are in disagreement as to whether the remaining felony, larceny from a building, falls under the purview of RSA 159:3–a. Plaintiff avers that it does not and therefore he has only been convicted of two felonies of the required three necessary for status as an "armed career felon" under RSA 159:3–a.

The court will not address the merits of this argument, however, as the issue before this court is not plaintiff's criminal liability. That matter was disposed of by the state courts. Rather, the issue is whether or not defendant made false representations in acquiring the arrest warrant. If defendant did in fact make such false statements he is not entitled to qualified immunity.

## II) *Qualified Immunity*

The defense of qualified immunity is available to defendant if he acted in an objectively reasonable manner in securing a facially valid warrant. *See Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). This defense shields police officers from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir.1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To be clearly established, the contours of the rights must be sufficiently clear so that a reasonable official would understand his or her actions violated that right. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The court does not consider whether defendant actually violated plaintiff's rights but instead focuses on whether his behavior was "objectively reasonable", as a matter of federal law, at the time and under the "circumstances."

*Quintero de Quintero v. Aponte-Roque,* 974 F.2d 226, 228 (1st Cir.1992).

■ An exception exists to the general rule of qualified immunity that "if an officer submitted an affidavit that contained false statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner." *Olson v. Tyler,* supra at 281; *see also Malley,* 475 U.S. at 345, 106 S.Ct. at 1098. Thus, defendant would not be granted immunity if he was issuing false statements to establish the appearance of probable cause.

To recapitulate, plaintiff alleges his arrest was based on false information provided by defendant. This alleged false information led to the incarceration of defendant thereby violating his rights under the First, Fifth and Fourteenth Amendments of the United States Constitution. There is no dispute that these rights were clearly established at the time of plaintiff's arrest.

Included in the record before the court is the Affidavit of Paul Leavitt, Assistant Sheriff of the Grafton County New Hampshire Sheriff's Department. Upon request of Ward Scott, Grafton County Attorney, Leavitt commenced an investigation on April 12, 1993, into allegations involving the conduct of defendant in the prosecution of plaintiff. Specifically, Leavitt investigated whether defendant and Paula Phelan, plaintiff's wife, had a romantic relationship, and if so whether there existed any criminal wrongdoing on the defendant's part.

Leavitt first interviewed the defendant, who admitted that he had been seeing Paula Phelan prior to December 1992, including the time beginning November 16, 1992. Doc. 20, p. 3. A sexual relationship with Paula Phelan began in December, 1992, after which they began cohabitating in February, 1993. Doc. 20 p. 3.

Leavitt interviewed Plymouth District Court and New Hampshire District Court Chief Judge Edwin W. Kelly, on April, 15,

1993. *Id.* at 4. Judge Kelly stated that when defendant presented him with the application for issuance of an arrest warrant on November 21, 1992, he believed from defendant's oral remarks as well as the affidavit that defendant was representing to the court that plaintiff was in possession of a firearm while outside of defendant's home on November 16, 1992. *Id.*

Plymouth District Court Judge Vincent J. Iacopino, who presided over plaintiff's bail hearing following his arrest on November 22, 1992, was also interviewed. He stated he was also under the impression, from defendant's representations, that plaintiff was in possession of a firearm while outside defendant's home. *Id.* at 5. Plaintiff likewise claims that defendant made "representations to the court that plaintiff was outside his home with a firearm...." Doc. 21, Affidavit of Thomas Phelan. Judge Iacopino set high cash bail, as a result of that representation and concerns for defendant's safety. Doc. 20, p. 5.

Thomas Phelan himself denied to Leavitt that he was carrying a gun outside of defendant's home while admitting that he had a gun at his home in Dorchester, New Hampshire which he kept under a pillow in his bed. *Id.* at 5–6; Doc. 21, Affidavit of Thomas Phelan. Daniel J. Webb, who was with defendant at Thompson's home, stated that he did not see or feel a gun on the plaintiff, nor did he see a gun in plaintiff's vehicle at the time in question. *Id.* at 6.

Paula Phelan stated that she was home the night of November 16, 1992, when plaintiff was out with Daniel Webb. According to her, the handgun in question was under her pillow at the Phelan residence in Dorchester, New Hampshire. *Id.* She further stated that plaintiff came home early the next morning and she witnessed him undress in the light and did not see any firearm on his person or in his clothing. *Id.* at 6–7. After plaintiff had come home and undressed, headlights reflected in their window and Paula Phelan observed plaintiff jump out of bed and reach for the gun under the pillow, suggesting to her that plaintiff had no other weapon. *Id.* at 7.

Paula Phelan subsequently took the gun to her friend Steve Welch to lock up in his safe. *Id.* Later, she along with her sister, Marie Jacobs, took the gun to defendant. *Id.* Leavitt states that Paula Phelan informed him in her first interview that she never told defendant that plaintiff had the gun on the night of November 16, 1992 outside defendant's home. *Id.*

Marie Jacobs, an employee in the Clerk's Office at the Plymouth District Court, became concerned and upset after reading defendant's application for arrest warrant because of inaccuracies she perceived based upon her conversations with Paula Phelan. *Id.* at 8. She brought these concerns to her superiors. *Id.* She also voiced her concerns to her sister, Paula, who subsequently informed her that defendant had stated to her that he (referring to defendant) "had to word it that way to get the warrant." *Id.* at 8–9. Jacobs stated that Paula approached defendant concerning the affidavit sometime between November 16 and November 21, 1992 and informed him that plaintiff did not have a hand gun in his possession while outside defendant's home. *Id.* at 9.

Leavitt concluded from his investigation that defendant's "police work in his arrest and efforts to secure the detention of plaintiff was objectively unreasonable and unethical." *Id.* at 9.

Leavitt also investigated defendant's role in proceedings ·in the matter of *State v. Thomas Phelan,* which thereafter occurred in Grafton County Superior Court before Judge Larry Smuckler, who presided over plaintiff's bail hearing on January 19, 1993. *Id.* at 10. Judge Smuckler recalled that the County Attorney, Ward Scott, was asking for one-half million dollars in ˙ cash bail and that defendant was present but did not testify. *Id.* He further recalled that the County Attorney made the representation, either on the record or at the bench, that plaintiff was carrying a firearm while outside defendant's home. *Id.* Judge Smuckler, concluding that there was concern for the safety of defendant, ordered the bail requested. *Id.* at 11.

The affidavit of Constantine Hutchinson, an attorney with the New Hampshire Public Defender's Office in Orford, New Hampshire, indicates that she represented plaintiff at the arraignment hearing before Judge Smukler. · *See* Doc. 28. Defendant attended this hearing and conferred with Attorney Ward Scott during the hearing. During a bench conference, and in support of the State's request for $250,000 cash bail, Attorney Scott informed the court that plaintiff "was outside defendant's home in Rumney on the night in question with a loaded gun, for the purpose of killing Thompson [Ward Scott may have used the words 'snuffed out' or some other synonym for kill]". *Id.;* Doc. 28, p. 4, Transcript of Arraignment, Jan. 19, 1993. Based upon this and other representations of the . State, bail was set at $250,000 cash or corporate security.

Leavitt .was also informed by Paula Phelan that prior to the arraignment on January 19, 1993, and while plaintiff's bail was $50,000, plaintiff's uncle was going to help him meet bail. She informed defendant of this fact prior to the hearing. *Id.*

Leavitt concluded from this investigation that defendant had "intentionally stretched the truth" in his representations to the County Attorney, Ward Scott and inevitably, the court, regarding the fact that plaintiff was carrying a gun while outside defendant's home on November 16, 1992. *Id.* at 12. Leavitt found the work of defendant in bringing his influence upon the obtaining of high cash bail˙to be "objectively unreasonable and unethical." *Id.* He opined that defendant " 'stretched the truth' and/or exaggerated the facts in his affidavit in support of his application for an arrest warrant, and in his representations to" Judges Kelly, Iacopino and Smuckler "and to County Attorney Ward Scott." *Id.*

Defendant's affidavit attached to the request for issuance of an arrest warrant. states:

On November 19, 1992 I was made aware by a confidential informant that a Thomas J. Phelan and a Daniel Webb, both convicted felons with more that [sic] 3 felony convictions as defined under 159:3–a, came to my residence with the intent to do me in. This occurred in the early morning hours of 11–16–92.

The same informant on 11–20–92, came to see me and brought the weapon that was carried by Thomas Phelan on that night, a Bryco .380 auto pistol, ser # 020978 . . .

Doc. 1, Exhibit. Paula Phelan, with whom defendant admittedly had a relationship, was the informant. See Doc. 28, Affidavit of Constantine Hutchinson. Although the affidavit does not state that plaintiff had the gun with him while outside of defendant's house, it certainly infers that such was the case.

Defendant contends that prosecution of plaintiff under RSA 159:3–a did not require plaintiff to be in actual physical possession of the gun when he came to defendant's house. If plaintiff had 3 prior felony convictions, a point the parties dispute, and he was in possession of a gun at some point in time, defendant contends that is enough for prosecution under RSA 159. While this is a correct interpretation of the statute, those were not the facts presented to the court by defendant. In that respect, the warrant was issued based upon false information.

■ The record clearly reveals that the judges involved in the arrest and detention of plaintiff were under the impression, based upon the defendant's statements to the court, either directly from defendant or through County Attorney Ward, that plaintiff was in possession of a handgun when he appeared at defendant's home. The court issued the arrest warrant and set high bail based upon the false picture painted by defendant of plaintiff being a threat to defendant's safety; when in fact, as defendant admits, plaintiff had no gun on his person.

Also troubling to the court is the defendant's admitted relationship with plaintiff's wife, and the possible ulterior motives this may have spurred in seeking the arrest and prosecution of plaintiff. As discussed above, Paul Leavitt, assistant Sheriff of Grafton County, was requested by County Attorney Ward Scott to investigate possible improprieties of defendant, based upon this relationship. These improprieties proved true as Leavitt concluded that defendant had "intentionally stretched the truth" and that his efforts in seeking the arrest, detention and high cash bail were "objectively unreasonable and unethical." From the court's perspective, to allow defendant to hide behind the shield of the law of absolute or qualified immunity would be a travesty of justice. Throughout this case there is evidence of a meretricious relationship between defendant and plaintiff's wife. There is no question that plaintiff's wife was the informant and the evidence may prove that defendant set up the plaintiff by his alleged machinations while armed with the sword of the law.

The court is somewhat perplexed and disturbed by the fact that defendant sought to have plaintiff charged under RSA 159:3–a, when it is not by any means clear that plaintiff's Massachusetts felony conviction of larceny from a building falls within the purview of that statute. Undoubtedly, plaintiff could have been charged under RSA 159:3 as being a felon in possession. The penalty for violation of RSA 159:3–a however, is a mandatory 10 year jail term with a maximum of 40 years, while RSA 159:3 is silent as to potential jail time for violators. Given the posture of this case, especially in light of the relationship existing between defendant and plaintiff's wife, the court is inclined to believe that relationship was a motivating factor in getting the plaintiff "out of the picture" by seeking a charge under RSA 159:3–a.

It may be argued that plaintiff, because of his past criminal history, cannot be considered a paragon of virtue. Albeit, he suffered many months of immurement, embarrassment, ridicule, mental anguish and grief due to the alleged misconduct of defendant. Defendant, because of his position of trust, was able to prosecute plaintiff in such a manner that it may be deemed to have been not prosecution, but persecution.

■ The court finds that defendant provided false information to the State court in seeking a warrant for the arrest of plaintiff, and also provided false information in subsequent arraignment and bail hearings. Because defendant did provide false information he is barred from raising the defense of qualified immunity.

### III) Causation

■ Defendant contends that the findings of probable cause by both the Plymouth

District Court and the Grafton County Grand Jury are intervening causes as a matter of law. The court disagrees. 42 U.S.C. § 1983 is to "be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Malley*, 475 U.S. at 345 n. 7, 106 S.Ct. at 1098 n. 7. Defendant's false statements were the catalyst for plaintiff's arrest and subsequent detention.

### IV) *Defendant's Testimony at Arraignment*

For what it's worth, the court finds that defendant did not testify at the plaintiff's arraignment in Superior Court on January 19, 1993. However, affidavits on record indicate that defendant was present at that hearing.

### V) *Conclusion*

Defendant's Motion for Summary Judgment is denied as to the defenses of qualified immunity and causation. Defendant's motion is granted with respect to the issue of his testimony at the plaintiff's arraignment.