# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-3113

MANUEL R. MORFIN,

*Plaintiff-Appellant,*

v.

CITY OF EAST CHICAGO, ROBERT A. PASTRICK,
in his official capacity as Mayor of the City of
East Chicago, FRANK ALCALA, individually
and in his official capacity as East Chicago
Police Chief, et al.,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 00 C 404—**Allen Sharp**, *Judge.*

———————

ARGUED APRIL 15, 2003—DECIDED NOVEMBER 18, 2003

———————

Before FLAUM, *Chief Judge*, and RIPPLE and WILLIAMS,
*Circuit Judges.*

RIPPLE, *Circuit Judge.* Manuel R. Morfin brought this
action pursuant to 42 U.S.C. § 1983 and Indiana state law for
alleged constitutional violations and other torts resulting
from his arrest and detention in May 1999. The defendants
moved for summary judgment on all of Mr. Morfin's claims,

and the district court granted the defendants' motion. Mr. Morfin appealed. We now affirm in part and reverse and remand in part.

# I

# BACKGROUND

## A. Facts

### 1. Undisputed facts

The facts of this case concern events leading up to the Democratic primary for the mayoral race in the City of East Chicago, Indiana, on May 4, 1999. In that election, Stephen Stiglich was challenging the incumbent mayor, Robert Pastrick. At that time, Mr. Morfin was a mechanic and head custodian for the Lake County Election Board ("Election Board"). He had been appointed to that position by Stiglich. Mr. Morfin also was a supporter of the Stiglich campaign.

On the evening of May 3, 1999, Mr. Morfin and another Election Board mechanic, Roy Shaffer, were eating dinner at a fast-food restaurant when Mr. Morfin received a call from Chris Lincoln, another Election Board employee. Lincoln reported that there had been a problem with the voting machines at one of the polling locations. Mr. Morfin and Shaffer drove to that location, a barbershop, to determine if there were problems with the machines. When they arrived at the barbershop, Mr. Morfin and Shaffer were stopped by Officer Andrew Kovats. The parties dispute the events that followed.

## 2. Events according to Mr. Morfin

As Mr. Morfin and Shaffer entered the barbershop, Officer Kovats[1] addressed them and said, " 'I'm taking fingerprints. Don't touch the machines.' " Morfin Dep. at 29. Mr. Morfin then introduced himself as a mechanic for the Election Board and stated: "I'm not going to touch them, I just want to check the seals to see if they're not broken." *Id.* at 34. As Mr. Morfin was introducing himself, a second officer, who Mr. Morfin later identified as Officer Louis Arcuri, arrived on the scene.

Officer Kovats acquiesced in Mr. Morfin's request. After checking the machines, Mr. Morfin then informed Officer Kovats that he was going to plug the machines in " 'to see if the window of the voting machine sa[id] "check ballot." ' " *Id.* at 35.[2] Officer Kovats did not attempt to stop Mr. Morfin in any way.

At about the same time as Mr. Morfin was plugging in the voting machines, Kevin Pastrick, who everyone present knew both as Mayor Pastrick's son and as being involved in his father's re-election bid, appeared at the threshold of the barbershop. *See* Morfin Dep. at 38. Kevin Pastrick was talking on his cellular telephone and informed the party to whom he was speaking that "Rick is in here." *Id.* at 39.

---

[1] Officer Kovats had arrived at the barbershop to conduct an investigation concerning alleged tampering with the voting machines by Curtis French; French had been arrested earlier that evening. Prior to Mr. Morfin's arrival, Officer Kovats had secured the crime scene by removing all non-necessary parties, had taken photographs and had begun dusting for fingerprints.

[2] Mr. Morfin could do so without physically touching the machines because the machine cords were connected to extension cords. *See* Morfin Dep. at 50.

Kevin Pastrick then told Officer Kovats to "[r]emove Rick, get him out of there." *Id.* at 40.[3] Mr. Morfin, however, did not leave, which prompted Kevin Pastrick to tell the party he was speaking to: " 'Tell Justin Rick won't leave.' " *Id.*[4]

Mr. Morfin then attempted to tell Officer Kovats that there was nothing wrong with the machines. Kevin Pastrick, however, told Officer Kovats that Mr. Morfin was interfering with the investigation of machine tampering. Mr. Morfin attempted to explain to Kevin Pastrick that he was not interfering with the investigation, but was assisting by checking the machines. Mr. Morfin then invited Kevin Pastrick to come and look at the machine to verify what he (Mr. Morfin) had been reporting. Kevin Pastrick did not move, but told Officer Kovats " 'Rick is interfering with the investigation, with evidence, have him arrested.' " *Id.* at 57.

After this last instruction from Kevin Pastrick, Officers Kovats and Arcuri grabbed Mr. Morfin, twisted his arm, shoved him against the wall and took him to the floor. *Id.* at 59-60. To this point, Mr. Morfin had not resisted any police action and informed the officers, " 'I'm going peacefully, you don't have to put handcuffs on me.' " *Id.* It was only after the officers took Mr. Morfin to the floor that Mr. Morfin crossed his arms on his chest to prevent the officers from handcuffing him. *Id.* at 105.

During the time that Mr. Morfin was in the barbershop, Officer Kovats called the East Chicago Police Department ("ECPD") seeking guidance on what Mr. Morfin's authority

---

[3]  At this point, Shaffer left the barbershop.

[4]  Mr. Morfin believed that Kevin Pastrick was referring to Justin Murphy, a local attorney who supported Mayor Pastrick's re-election campaign.

was and how he should be treated. Officer Kovats first spoke with Frank Alcala, chief of the ECPD. According to Chief Alcala, the telephone call was interrupted because Mr. Morfin was attempting to take control of the voting machines.[5] Chief Alcala then turned the call over to Thomas Ryan, the ECPD legal advisor. Ryan, however, was unsure of the legal authority of Mr. Morfin and simply told Officer Kovats to do his job as a police officer. After Ryan spoke with Officer Kovats, Chief Alcala also told Officer Kovats to do his job. Officer Kovats then informed Chief Alcala that he was going to arrest Mr. Morfin for interfering with the scene.

Mr. Morfin was transported to the ECPD that evening by Officer Clarence Anderson. Mr. Morfin then spent several hours in a cell at the police department and was released on his own recognizance. The arrest report indicated that Mr. Morfin was arrested for resisting law enforcement, in violation of Ind. Code § 35-44-3-3(a)(1), and disorderly conduct, in violation of Ind. Code § 35-45-1-3(2).[6] Formal charges never were filed against Mr. Morfin either by the Lake County Prosecutor or a special prosecutor.

---

[5]  Chief Alcala testified:

> Q:  What was your understanding of what Morfin was doing during this conversation you were having with Kovats?
>
> A:  That Rick [Morfin] was disregarding a police order and was attempting to interrupt a crime scene and smudge the prints—if there were any fingerprints on the machines, to try to cover it up.

Alcala Dep. at 83-84.

[6]  Some time after Mr. Morfin was arrested and transported to the ECPD, Chief Alcala became aware that Mr. Morfin had been arrested and was being held on the premises.

### 3. Events according to defendants

The defendants relate a very different version of events. According to the defendants, Officer Kovats was dusting the crime scene for fingerprints when Mr. Morfin arrived. Mr. Morfin announced that he worked for the Election Board and showed identification. *See* Kovats Dep. (8/14/01) at 28. He assured Officer Kovats that he would not touch anything, but just wanted to check the seals on the machines; Officer Kovats agreed. Shortly after this discussion, Officers Arcuri and Anderson arrived on the scene. *See id.* at 19.

At that point, Mr. Morfin informed Officer Kovats that he (Mr. Morfin) was taking over the crime scene. *See id.* at 31. Officer Kovats asked Mr. Morfin on what authority he could take such an action; without responding directly, Mr. Morfin told Officer Kovats that he would be taking the machines. *See id.* At that point, Officer Kovats interrupted and instructed Mr. Morfin to wait a minute while he made a phone call. Officer Kovats then called the ECPD and spoke with Ryan. While Officer Kovats was on the phone, Mr. Morfin started to remove the machines; Officer Kovats instructed him to stop. Mr. Morfin did not do so, and Officer Kovats told Mr. Morfin "to stop touching the machines." *Id.* at 44. Mr. Morfin responded: " 'F--- you. This crime scene belongs to me now and I'm taking the machines.' " *Id.* At that point, Officer Kovats instructed Mr. Morfin to "[g]et out of my crime scene" and told Mr. Morfin that this was his last warning. *Id.* Mr. Morfin flat-out refused to leave at which point he placed Mr. Morfin under arrest. Mr. Morfin, instead of cooperating with the officers, refused the officers' instruction to place his hands behind his back. *See id.* He also crossed his arms at his chest so as to prevent the

officers[7] from effecting the arrest. He then told the officers that they did not know who they were "messing with," and that he was "protected by important people." *Id.* at 45.

After he was handcuffed, Mr. Morfin calmed down and was transported to jail by Officer Anderson. According to the defendants, although Kevin Pastrick may have arrived at the barbershop at some time, he did not enter the barbershop, he did not give any orders, and the officers did not follow any instructions given by Kevin Pastrick.

## B. District Court Proceedings

Mr. Morfin filed a complaint in district court against the City of East Chicago, Mayor Pastrick, Chief Alcala, Officer Kovats, Officer Arcuri, Officer Anderson and Kevin Pastrick. Specifically, Mr. Morfin set forth his version of the events of the evening of May 3, 1999, and claimed that "[t]he challenged actions of the defendants and their agents were taken against Mr. Morfin because of his support of Stiglich, Mayor Pastrick's opponent in the 1999 democratic primary election." R.1 at ¶ 13. Furthermore, continued Mr. Morfin, the alleged actions were in violation of "the first, fourth and fourteenth amendments to the U.S. Constitution, which the plaintiff seeks to enforce pursuant to 42 U.S.C. § 1983, Art. 1, §§ 9, 11, 12 and 15 of the Indiana constitution, and Indiana tort law." *Id.* at ¶ 15.

The defendants moved for summary judgment on all claims, and the district court rendered judgment in the defendants' favor. The district court believed that its first task was "to determine whether probable cause existed for the

---

[7] Officer Kovats identifies Officer Davis, as opposed to Officer Arcuri, as assisting in the arrest. Officer Davis is not a party to this action.

charges or a closely related charge which formed the basis for Morfin's arrest." R.114 at 14. Looking to the first charge of resisting law enforcement, which the district court acknowledged required a showing of forcible resistance, the district court found that Mr. Morfin "persisted in attempting to control the scene and began to touch the machines after being instructed not to do so. . . . He ignored Officer Kovats [sic] repeated instructions to leave the scene, which led the officers to make the determination to arrest him." *Id.* at 17. As well, the district court explained that

> a struggle ensued in light of Mr. Morfin's refusal to comply with the order of both Officer Davis and Officer Kovats to leave the barbershop (Davis p. 39). Rather than comply, Morfin refused to leave the scene and allow the criminal investigation continue. Morfin does not dispute that he was ordered not to touch the machines in light of the ongoing criminal investigation begun by Officer Kovats. Furthermore, Morfin does not dispute the testimony of both Officer Kovats and Officer Davis that the struggle did not begin until after their order to leave the building was ignored by him (Davis p. 40).

*Id.*[8] The district court then held that

---

[8]  At this point in its opinion, the district court noted the following:

> Morfin attempts to create an issue of fact in focusing on Officer Davis's statement that Morfin merely stood his ground and refused to leave. (See Memorandum Opposing D's Summary judgment at p. 17). However, Morfin does not dispute the claim by both Davis and Kovats in the Defendants' "Statement of Material Facts" that a struggle ensued because Morfin did not want to leave the building after being
> (continued...)

> [a]n officer has the right to enforce a lawful order, such as securing a potential crime scene, and in turn if an individual through force refuses to obey such an order an arrest is entirely proper. . . . Furthermore, under clear Indiana precedent, a law enforcement officer has probable cause to arrest an individual who struggles and resists an officer while engaging in his official duties.

R.114 at 17-18 (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997); *Wellman v. State*, 703 N.E.2d 1061 (Ind. Ct. App. 1998)).

The district court also found that there was probable cause to arrest Mr. Morfin for disorderly conduct because he engaged "in fighting or in tumultuous conduct." *Id.* at 18. According to the district court, this was shown by Mr. Morfin's repeated refusals to stop touching the voting machines, his protestations that the evidence belonged to him, his use of vulgarity with the police, and the struggle that ensued. Consequently, the arresting officers, Officers Kovats and Arcuri, had not committed any Fourth Amendment violation.[9]

---

[8] (...continued)
> told to do so. (Davis p. 39). Further, Morfin does not dispute that he had to be forcibly pushed out. (Davis p. 40). The local rules of procedure specifically provide that: the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion." [sic] N.D. Ind. L.R. 56.1(b).

R.114 at 17 n.6.

[9] The district court found alternatively that the officers were entitled to qualified immunity.

Turning to the other defendants in the case, the district court first determined that Officer Anderson played no role in the arrest of Mr. Morfin and therefore could not be liable for any wrongdoing at the time of arrest. At the very least, the court concluded, Officer Anderson had qualified immunity because he merely was dispatched to the barbershop and proceeded to transport Mr. Morfin to the ECPD.

With respect to the alleged involvement of Kevin Pastrick, the district court engaged in a slightly more detailed analysis. Relying on *Tarkanian v. NCAA*, 488 U.S. 179 (1988), the district court determined that, given the totality of the circumstances, Kevin Pastrick could not be considered a state actor for purposes of § 1983 liability. According to the district court, although Kevin Pastrick's statements to the police

> were unfortunate, inappropriate and probably only fueled the adamancy of Morfin to attempt to exert his control over the voting machines, there is no evidence in this record that they had any impact on the officers' decision to make the arrest. The officers were under no obligation to follow the recommendations made by Pastrick. Indeed the record reflects that his recommendations played no role in the decision to make the arrest.

R.114 at 22 (citing Kovats' deposition).

The court then addressed the liability of Chief Alcala. Although the court acknowledged that, under certain circumstances, a state actor's failure to intervene renders him liable under § 1983, this was not such a case. First, the court found that there could be no liability against Chief Alcala because there was probable cause for the arrest. "Further," continued the district court,

> even if there had been a constitutional violation, Chief Alcala's personal involvement in the matter consisted of merely turning the phone over to Tom Ryan the ECPD's legal advisor and later telling Officer Kovats' [sic] his job. Thus, Morfin's claim based on Chief Alcala's alleged failure to intervene in his arrest is without merit.

*Id.* at 25.

Finally, the court addressed Mr. Morfin's excessive force and First Amendment claims. The court found that, given the totality of the circumstances, specifically Mr. Morfin's continued refusal to leave the premises, the struggle that preceded his arrest and the fact that Mr. Morfin suffered no injury, the force was not excessive. Additionally, the district court found that the officers were entitled to qualified immunity because "based upon the factual record these ECPD officers did not violate any clearly established rule prohibiting such conduct." *Id.* at 29. Finally, the district court found that, because there was probable cause for the arrest, Mr. Morfin's First Amendment claim (that his arrest was motivated by his support of candidate Stiglich) must fail.[10]

Mr. Morfin timely appealed.

## II

## ANALYSIS

### A.  Standard of Review

We review de novo a district court's decision to grant summary judgment. *See Remer v. Burlington Area Sch. Dist.,*

---

[10] The district court also found no liability on the part of the City of East Chicago because the claims were not based upon any allegedly unconstitutional policy or practice of the city.

286 F.3d 1007, 1010 (7th Cir. 2002). "In evaluating the district court's decision, we 'must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party.' " *Conley v. Vill. of Bedford Park,* 215 F.3d 703, 708 (7th Cir. 2000) (quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000)). However, the burden is on the non-moving party to come forward with specific facts in the record that demonstrate there is a genuine issue for trial. *See Moore v. J.B. Hunt Trans., Inc.,* 221 F.3d 944, 950 (7th Cir. 2000).

**B. Fourth Amendment Claims**

### 1. Probable cause

Mr. Morfin first submits that genuine issues of material fact precluded the district court from entering summary judgment on behalf of the defendants with respect to his Fourth Amendment false arrest claim. Specifically, Mr. Morfin maintains that the arresting officers did not have probable cause to arrest him either for the offense of resisting law enforcement or for the offense of disorderly conduct as those offenses are defined under Indiana law. *See* Ind. Code §§ 35-44-3-3(a)(1), 35-45-1-3(2).

"It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest." *Juriss v. McGowan*, 957 F.2d 345, 349 n.1 (7th Cir. 1992) (citing *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989)); *see also Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991) (stating that probable cause to arrest "serves as an absolute bar to the plaintiff's claim for false arrest/imprisonment"). Simply stated, "a person arrested with probable cause cannot cry false arrest . . . . [a]nd without a predicate constitutional violation, one cannot make out a prima facie

case under § 1983." *Juriss*, 957 F.2d at 349 n.1 (internal citations omitted). Consequently, if there was probable cause to arrest Mr. Morfin, it serves as a bar to his § 1983 false arrest claim. We turn, therefore, to the legal bases for Mr. Morfin's arrest.

The defendants first maintain that there was probable cause to arrest Mr. Morfin on the charge of "resisting law enforcement" pursuant to Ind. Code § 35-44-3-3(a)(1). "Resisting law enforcement" occurs when a person "knowingly or intentionally" "(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officers while the officer is lawfully engaged in the execution of his duties as an officer." Ind. Code § 35-44-3-3(a)(1). It is clear that under Indiana law the resistance must involve force, which occurs "when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." *Spangler v. State*, 607 N.E.2d 720, 723 (Ind. 1993). A verbal refusal is not sufficient—some physical sign of resistance is necessary before the statute is violated. *Compare Spangler*, 607 N.E.2d at 724-25 ("A review of the record fails to disclose the presence of evidence from which a reasonable trier of fact could conclude with the required level of certainty that Spangler acted forcibly, as forcibly is defined above. There was no strength, power, or violence directed towards the law enforcement official. *There was no movement or threatening gesture* made in the direction of the official. Spangler repeatedly and firmly refused to accept service of process, then walked away." (emphasis added)), *with Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997) ("Potts' step toward the entrance of the rally, in response to the officers' lawful orders to stay out of the rally if he did not relinquish his tape recorder, constitutes 'force' as that term is understood in the context of interfering with officers' duties.").

In the present case, whether Mr. Morfin forcibly resisted Officer Kovats' orders or forcibly interfered with the investigation are matters of dispute among the parties. Taking the facts in the light most favorable to Mr. Morfin, as we must at the summary judgment stage, Mr. Morfin did not refuse any orders, much less do so with force. *See* Morfin Dep. at 121, 125.[11] It is only if one accepts the defendants'

---

[11] As set forth above, with respect to the issue of physical resistance, the district court noted that

> Morfin attempts to create an issue of fact in focusing on Officer Davis's statement that Morfin merely stood his ground and refused to leave. However Morfin does not dispute the claim by both Davis and Kovats in the Defendants' "Statement of Material Facts" that a struggle ensued because Morfin did not want to leave the building after being told to do so. . . . The local rules of procedure provide that: the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion." [sic] N.D. Ind. L.R. 56.1(b).

R.114 at 17 n.6 (internal citations omitted). Mr. Morfin argues that the district court's invocation of the local rule was in error. Specifically, Mr. Morfin states:

> The court's reliance on N.D. Ind. L.R. 56.1(b) is misplaced because, as pointed out in the plaintiffs' response, "Plaintiffs' Statement of Genuine Issues," French R-84, the defendants' "statement does not comply with L.R. 56.1(a), because it requires a statement 'as to which the moving party contends there is no genuine issue.' " Instead, the defendants submitted a "statement of material facts," that makes no attempt to show that facts are not in dispute, often presenting several versions. See French R-67, at 15-34 (part of Morfin's version
> (continued...)

---

[11] (...continued)
> is at 30-33). Also, Morfin does contest the defendants' version in his statement of genuine issues, French R-84, at 18-20, and in his response to summary judgment. R-70, at 1-8.

Appellant's Br. at 14 n.13. The defendants, in their brief, do not contest Mr. Morfin's claims that the district court erred in invoking Local Rule 56.1 or that their own statement of material facts failed to comply with the local rule.

Our independent review of the record confirms that Mr. Morfin is correct on both counts. First, the defendants' statement of material facts sets forth the accounts of the events in the barbershop as recalled by Officers Kovats, Arcuri and Davis, as well as Mr. Morfin. *See* R.64 at 30-33. Consequently, even without the benefit of Mr. Morfin's statement of genuine issues, it is apparent that the parties have vastly different recollections of the events leading to Mr. Morfin's arrest. Furthermore, Mr. Morfin's statement of genuine issues, *see* R.114 (Statement of Genuine Issues) at 18-20, sets forth his version of events that stands in stark contrast to that forwarded by Officers Kovats, Arcuri and Davis.

We typically defer to a district court's decision to enforce a local rule. *See, e.g., Borcky v. Maytag Corp.*, 248 F.3d 691, 697 (7th Cir. 2001). However, this is neither a case in which the non-moving party has failed to file a statement of genuine issues, *see, e.g., Appley v. West,* 929 F.2d 1176, 1179 (7th Cir. 1991), nor a case in which the non-moving party filed only a general statement of genuine issues without any factual support, *see, e.g., Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). Furthermore, Local Rule 56.1 for the Northern District of Indiana, unlike the equivalent rule for the Northern District of Illinois, does not require the non-moving party to respond in a paragraph-by-paragraph manner to the moving party's statement of material facts; Local Rule 56.1 requires only that "[a]ny party opposing the motion . . . file . . . a response that shall include in its text or

(continued...)

version of events that Mr. Morfin was defiant (and physically so) in response to an officer's order to leave the premises. Consequently, a genuine issue of material fact exists regarding whether Mr. Morfin forcibly resisted Officer Kovats' orders and, therefore, whether the officers had probable cause to arrest Mr. Morfin for interfering with law enforcement.

The defendants also believe that there was probable cause to arrest Mr. Morfin for disorderly conduct. Disorderly conduct occurs when an individual "recklessly, knowingly, or intentionally" "(1) engages in fighting or in tumultuous conduct" or "(2) makes unreasonable noise and continues to do so after being asked to stop." Ind. Code § 35-45-1-3(1) & (2). The arrest report indicates that Mr. Morfin was arrested for violating subsection (2) of the statute.[12] With respect to

---

[11] (...continued)

appendix thereto a 'Statement of Genuine Issues' setting forth . . . all material facts as to which it is contended there exists a genuine issue necessary to be litigated." N.D. Ind. L.R. 56.1(a). Without the benefit either of explanation by the district court or of argument by the defendants in support of the district court's invocation of the local rule, we respectfully disagree with the district court that Mr. Morfin did not set forth the controverted facts or otherwise failed to comply with the requirements of the local rule. Therefore, we do not rely on the district court's application of Local Rule 56.1(b), but look to the parties' submissions in support of and in opposition to the summary judgment motions to determine whether a genuine issue of material fact exists with respect to the matters before this court.

[12] The arrest report states: "On the above date and time Investigator Kovats was attempting to arrest the above listed subject for

(continued...)

this subsection, Indiana courts have held that "the volume of [the arrestee's] speech is critical in determining whether it was unreasonable . . . ." *Johnson v. State*, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999). "[I]n order to support a conviction for disorderly conduct, '[t]he State must prove that a defendant produced decibels of sound that were too *loud* for the circumstances.' " *Id.* (quoting *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996)).

Again, however, whether there was probable cause to believe that Mr. Morfin had engaged in disorderly conduct involving unreasonable noise depends on which version of events one accepts. At least one of the officers at the scene stated in his deposition that Mr. Morfin never raised his voice, *see* Davis Dep. at 30, and Mr. Morfin testified that he never directed any threats or obscenities toward the officers at the scene. One has to accept the other officers' account of the events in order to conclude that Mr. Morfin raised his voice and was belligerent. However, such a credibility determination at the summary-judgment stage constitutes error. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."); *Black v. Lane*, 824 F.2d 561, 562 (7th Cir. 1987) ("Credibility normally cannot be determined by summary judgment.").

---

[12] (...continued)
interfering with law enforcement. The subject became loud and boisterous and told the officer to "F--- off" several times the subject was asked to quit [sic] down several times because he was drawing a crowd to the crime scene." R.70, Ex.14 (Arrest No. 99A1100).

Finally, the defendants argue that the officers had probable cause to arrest Mr. Morfin for obstruction of justice, pursuant to Ind. Code § 35-44-3-4. A person commits obstruction of justice under Indiana law if that person "alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation." Ind. Code § 35-44-3-4(a)(3). According to the defendants, the arresting officers had probable cause to believe that Mr. Morfin had violated this provision because he expressed a desire to take over the investigation, told Officer Kovats that he was taking the voting machines and repeatedly refused to leave when asked to do so.

If, indeed, a jury were to accept the defendants' version of the facts, we would agree with the defendants that the officers had probable cause to arrest Mr. Morfin for obstruction of justice. However, Mr. Morfin disputes that he ever told the officers that he was going to take over the crime scene, that he was going to disassemble and take the voting machines, or that he would not leave the crime scene. As noted above, in determining whether the district court properly entered summary judgment, we must interpret the facts in the light most favorable to the non-moving party, here Mr. Morfin. Therefore, accepting the facts as forwarded by Mr. Morfin, there was no probable cause to believe that he engaged in an obstruction of justice.

In sum, the parties dispute the events leading to the arrest of Mr. Morfin; one account would support a finding of probable cause and justify a resulting arrest, and the other would not. Consequently, a genuine issue of material fact exists concerning whether the arresting officers had probable cause. Therefore, the district court erred in granting

summary judgment to Officers Kovats and Arcuri on Mr. Morfin's Fourth Amendment claim.[13]

---

[13] The defendants argue that, because they have raised the defense of qualified immunity, this court not only must consider whether there was actual probable cause to arrest, but also must determine whether a reasonable officer could have mistakenly believed that probable cause existed. *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). If there was " 'arguable probable cause' to arrest Morfin," continue the defendants, "then they are entitled to qualified immunity." Appellees' Br. at 23. The critical inquiry, the defendants emphasize, is whether the facts apparent to the arresting officer at the time of the arrest would have caused a reasonable officer to believe there was probable cause.

The problem with the application of the "arguable probable cause" concept to the present case is that it is not at all clear, at this stage in the litigation, what facts were within Officer Kovats' knowledge at the time he arrested Mr. Morfin. If the facts are that Mr. Morfin defied a direct order from an officer to leave the premises, became belligerent, and interfered with the crime scene, then there is no question that Officer Kovats not only had arguable probable cause, but, indeed, had actual probable cause to arrest Mr. Morfin. However, Mr. Morfin contends that he never refused an order of an officer, that he was quiet and subdued, and that he did not interfere with the investigation at all; instead, his arrest was the result of Kevin Pastrick's interference. When, as here,

> the arrestee challenges the officer's description of the facts and presents a factual account where a reasonable officer would *not* be justified in making an arrest, then a material dispute of fact exists. Where there is a genuine issue of material fact surrounding the question of plaintiff's conduct, we cannot determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law.

(continued...)

### 2.  Officer Anderson's involvement in the arrest

Mr. Morfin maintains that the district court also erred in granting summary judgment to Officer Anderson on Mr. Morfin's Fourth Amendment claim on the ground that Officer Anderson was not personally involved in the arrest. In his submissions to this court, however, Mr. Morfin barely mentions Officer Anderson and has failed to argue how Officer Anderson's involvement implicates him in the alleged constitutional violation. Therefore, we could affirm the district court's judgment in favor of Officer Anderson simply on the basis that Mr. Morfin has waived any argument with respect to Officer Anderson's liability. *See, e.g., Sere v. Bd. of Trustees of the Univ. of Illinois*, 852 F.2d 285, 287 (7th Cir. 1988) (noting that the court has "consistently and evenhandedly" applied the waiver doctrine when an appellant fails to present issues, supported by appropriate judicial authority, in his opening brief). However, even a cursory review of the record reveals that Officer Anderson's only involvement with Mr. Morfin was to transport him from the barbershop to the ECPD for booking. Officer Anderson was Mr. Morfin's temporary custodian and nothing else. This action, without more, does not suffice to hold Officer Anderson liable for the alleged constitutional violations against Mr. Morfin. *See Maltby v. Winston*, 36 F.3d 548, 559 (7th Cir. 1994) (holding that sheriff who transported and otherwise acted as custodian of arrestee could not be liable for alleged constitutional violation of arrest without

---

[13] (...continued)
*Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir. 1993). Because the facts within Officer Kovats' knowledge at the time of the arrest are a matter of dispute between the parties, summary judgment on the basis of "arguable probable cause" also is inappropriate.

probable cause). We therefore affirm summary judgment in favor of Officer Anderson.

### 3. Chief Alcala's alleged failure to intervene

Mr. Morfin next argues that the district court erred in granting summary judgment to Chief Alcala. According to Mr. Morfin, the law is clearly established that an officer has a duty to intervene to prevent a false arrest or the use of excessive force if the officer is informed of the facts that establish a constitutional violation and has the ability to prevent it. *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Here, Mr. Morfin maintains that Chief Alcala was informed of the situation at the barbershop by Officer Kovats but, despite this knowledge, failed to take any action to prevent Officer Kovats from going forward with the allegedly unlawful arrest of Mr. Morfin.

Chief Alcala cannot be liable for any constitutional violations committed by his officers simply by virtue of his supervisory role. As we have explained on more than one occasion,

> "[T]o be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct." [*Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 471 (7th Cir. 1999)] (citations omitted). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. . . . The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chi.*, 856 F.2d 985, 992-93 (7th Cir. 1988) (citations omitted).

*Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). The question therefore is whether, based on the facts in the record, Chief Alcala approved, condoned, or turned a blind eye to Officer Kovats' allegedly unconstitutional actions.

If the record suggested that Chief Alcala had knowledge of facts that would cause him to believe that Officer Kovats was about to make an unconstitutional arrest but failed to use his authority to stop the violation, his failure would result in liability under § 1983. However, we do not believe that the record, even when read in the light most favorable to Mr. Morfin, can support a conclusion that Chief Alcala had knowledge that an unlawful arrest (or any other constitutional violation) was imminent.

Only three individuals testified regarding Chief Alcala's telephone conversation with Officer Kovats: Officer Kovats, Chief Alcala and Ryan. Officer Kovats' deposition does not contain any reference to a specific conversation with Chief Alcala; according to Officer Kovats, he spoke with one or two people at the ECPD before being transferred to Ryan, with whom he had his only substantive conversation. Chief Alcala testified that he was informed by Officer Kovats "[t]hat Rick was disregarding a police order and was attempting to interrupt a crime scene and smudge prints—if there were any fingerprints on the machines—to try to cover it up." Alcala Dep. at 84. Unsure about Mr. Morfin's authority, Chief Alcala turned the telephone over to Ryan. Finally, according to Ryan, Officer Kovats told him that Mr. Morfin wanted access to the machines, and, in the middle of the telephone conversation, "Mr. Morfin went for the machines and tried to take them." Ryan Dep. at 35. According to the evidence in the record, therefore, the only source of information for both Chief Alcala and Ryan concerning what was occurring in the barbershop on May 3, 1999, was Officer Kovats. Mr. Morfin does not point to any evidence

in the record that establishes that Chief Alcala's knowledge of the events involving Mr. Morfin was broader than that reported to him by Officer Kovats. Similarly, Mr. Morfin fails to come forward with any evidence that Chief Alcala had a reason to question what Officer Kovats reported to him over the telephone. The record reflects that the only information known to Chief Alcala prior to the arrest was that Mr. Morfin was interfering with the crime scene and ignoring the direct orders of police officers. Based on this information, Chief Alcala reasonably could have concluded that there was probable cause to arrest Mr. Morfin and that there was no reason to put Officer Kovats to further inquiry or to prevent him from arresting Mr. Morfin.

As noted above, the burden was on Mr. Morfin to come forward with specific facts in the record that demonstrated that there was a genuine issue of material fact for trial. There is no evidence in the record from which a jury could conclude that Chief Alcala was apprised of a different set of events at the barbershop, and "[s]peculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Consequently, we must affirm the district court's entry of summary judgment in favor of Chief Alcala.[14]

---

[14] Mr. Morfin also faults Chief Alcala for failing to hasten his release once he discovered Mr. Morfin had been detained. However, again, there is no evidence in the record to suggest that Chief Alcala was aware of facts that would lead a reasonable officer in his position to conclude that Mr. Morfin's arrest was unlawful. Additionally, as noted above, the fact that Chief Alcala was Mr. Morfin's ultimate custodian during his short detention on the evening of May 3, 1999, is insufficient involvement to hold Chief Alcala liable for the arrest.

(continued...)

### 4. Kevin Pastrick's alleged participation in the arrest

Mr. Morfin also maintains that the district court erred in entering summary judgment on behalf of Kevin Pastrick. Mr. Morfin points to the Supreme Court's decisions in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), in support of the proposition that private individuals can be held liable under § 1983 when they act jointly with state officials in denying the rights of other citizens. Mr. Morfin believes that a genuine issue of material fact exists as to whether Kevin Pastrick acted jointly with Officer Kovats in the allegedly unlawful arrest.

The defendants concede "that a private individual could be held liable under Section 1983 upon a showing that the private individual and state actor(s) acted in concert or jointly in depriving a person of civil rights." Appellees' Br. at 44. However, the defendants maintain that there is no evidence in the record to suggest that any comment made by Kevin Pastrick influenced the officers to arrest Mr. Morfin. Furthermore, because the decision to arrest "occurred after Morfin's refusal to follow commands through the various officers' requests not to touch the voting machines," "any alleged statements attributed to Pastrick were not decisive." *Id.* at 46. We respectfully disagree.

---

[14] (...continued)

We also note that Mr. Morfin's claim against the City of East Chicago rests on the involvement of Chief Alcala and his role as a policymaker for the City. Consequently, because we hold that there is insufficient evidence in the record to hold Chief Alcala liable for Mr. Morfin's allegedly unlawful arrest, we also uphold the district court's judgment in favor of the City with respect to this claim.

"Although the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints." *Edmonson*, 500 U.S. at 620. A court must be guided by two considerations in determining whether to hold a private citizen liable for an alleged constitutional violation: 1) "whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority"; and 2) "whether the private party charged with the deprivation could be described in all fairness as a state actor*." Id.* There is no question that Mr. Morfin's arrest resulted from the exercise of a privilege of a police officer, having its source in state authority. The only issue is whether Kevin Pastrick, in this scenario, can be considered a state actor.

A private citizen may be considered a state actor for any number of reasons, for instance, "because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937. This is necessarily a fact-bound inquiry, and, as the Supreme Court has observed, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961).

We cannot say as a matter of law that, on the record before us, Kevin Pastrick did not act jointly with Officer Kovats in the arrest of Mr. Morfin. According to Mr. Morfin and Shaffer, Mr. Morfin cooperated with the officers in the barbershop and only examined the machines with the permission of Officer Kovats. There was no concern with respect to Mr. Morfin's actions until Kevin Pastrick arrived on

the scene. Then, after Kevin Pastrick's repeated orders for Officer Kovats to arrest Mr. Morfin, Officers Kovats and Arcuri arrested Mr. Morfin. The combination of these events could lead a jury to conclude that, without the influence of Kevin Pastrick, Officer Kovats would not have arrested Mr. Morfin.

The present situation is not unlike the procedural and factual situation addressed by the Supreme Court in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). In that case, the Supreme Court held that genuine issues of material fact precluded summary judgment on the issue of whether the employees of the Kress store had acted in concert, or had conspired, with local police in arresting a Caucasian woman for attempting to eat with a group of African-American students. The Supreme Court noted that

> in moving for summary judgment, Kress argued that "uncontested facts" established that no conspiracy existed between any Kress employee and the police. To support this assertion, Kress pointed first to the statements in the deposition of the store manager (Mr. Powell) that (a) he had not communicated with the police, and that (b) he had, by a prearranged tacit signal ordered the food counter supervisor to see that Miss Adickes was refused service only because he was fearful of a riot . . . . Kress also relied on affidavits from Hattiesburg chief of police, and the two arresting officers, to the effect that store manager Powell had not requested that petitioner be arrested. Finally, Kress pointed to the statements in petitioner's own deposition that she had no knowledge of any communication between any Kress employee and any member of the Hattiesburg police, and was relying on circumstantial evidence to support her contention that there was an arrangement between Kress and the police.

*Id.* at 154-56 (footnotes omitted). Although the plaintiff admitted that she had no knowledge of an agreement between any Kress employee and the police, she did bring forward evidence that the policeman who arrested her was present in the store at the time she was refused service. In the Court's view, the presence of this policeman in the store created a genuine issue of material fact with respect to whether an agreement had been reached between that officer and a Kress employee. The Court explained:

If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service.

*Id.* at 158.

Similarly, in this case, although there is no evidence of an overt agreement between Kevin Pastrick and Officer Kovats to arrest Mr. Morfin, Kevin Pastrick's presence at the scene, his urgent insistence concerning Mr. Morfin's arrest and the sequence of events leading to Mr. Morfin's arrest would allow a reasonable juror to conclude that Kevin Pastrick and Officer Kovats had reached a meeting of the minds that Mr. Morfin should be arrested or had acted jointly in doing so. Consequently, the district court erred in entering summary judgment for Kevin Pastrick on Mr. Morfin's Fourth Amendment claim.

## C. Excessive Force

Mr. Morfin next contends that the district court erred when it entered summary judgment for the defendants on his excessive force claim. According to Mr. Morfin, genuine issues of material fact exist concerning whether the arresting officers used excessive force in effecting his arrest. After a

review of the record, we conclude that there are disputed material facts with respect to this issue as well.

Because Mr. Morfin's claim of excessive force arises in the context of an arrest, we evaluate the officers' use of force according to the reasonableness standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. [*Tennessee v. Garner,* 471 U.S. 1, 8 (1985),] quoting *United States v. Place*, 462 U.S. 696, 703 (1983). . . . Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," *Bell v. Wolfish*, 441 U.S. 520, 559 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id.* (citations and parallel citations omitted).

The district court found that Mr. Morfin repeatedly refused to obey police orders and attempted to evade the officers' attempt to place him under arrest. Consequently, the district court held, the force used by the officers was reasonable under the circumstances.

However, viewing the record in the light most favorable to Mr. Morfin, a jury could reach the opposite conclusion. According to both Mr. Morfin and Shaffer, Mr. Morfin did not pose a threat to the officers—he was docile and coopera-

tive. Furthermore, Mr. Morfin did not resist arrest in any way prior to the officers' use of excessive force. Mr. Morfin testified that Officers Kovats and Arcuri grabbed him, twisted his arm, shoved him toward the wall and took him to the floor. *See* Morfin Dep. at 59-60. To this point, Mr. Morfin had not resisted any police action and informed the officers, " 'I'm going peacefully, you don't have to put handcuffs on me.' " *Id.* It was only after the officers took Mr. Morfin to the floor that Mr. Morfin crossed his arms on his chest to prevent the officers from handcuffing him. *Id.* at 105. If a jury were to credit Mr. Morfin's version of events over that of the arresting officers, it could conclude that there was no reason for the officers to exert such force on Mr. Morfin. Therefore, the grant of summary judgment in favor of Officers Kovats and Arcuri on Mr. Morfin's excessive force claim must be reversed.

### D. First Amendment

Finally, Mr. Morfin contends that the district court erred in granting summary judgment to the defendants on his First Amendment claim. Specifically, Mr. Morfin argues that he brought forth sufficient evidence to show that he was arrested because of his support for Mayor Pastrick's opponent in the mayoral primary.

There is no question that "[a]n act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). "In order to establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) his conduct was constitutionally protected; and (2) his conduct was a 'substantial factor' or 'motivating factor' in the defendant's challenged actions." *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002). The protected conduct " 'cannot

be proven to motivate retaliation[] if there is no evidence that the defendants knew of the protected [activity].'" *Stagman v. Ryan*, 176 F.3d 986, 1000-01 (7th Cir. 1999) (quoting *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1369-70 (7th Cir. 1993)). No one contests that Mr. Morfin's actions in supporting Stiglich in the mayoral primary would suffice as constitutionally protected behavior for purposes of the first prong of the above test. The question is whether, with respect to each defendant, the conduct was a substantial or motivating factor in the defendants' challenged action.

Turning first to the arresting officers, we do not believe that Mr. Morfin has met his burden of coming forward with evidence from which a jury could conclude that his support of Stiglich motivated the officers' decision to arrest him (Mr. Morfin). Mr. Morfin does not point to any evidence in the record that Officer Kovats or Officer Arcuri knew of Mr. Morfin's support of Stiglich.[15] Consequently, without knowledge that Mr. Morfin was supporting Stiglich, Mr. Morfin's support of Stiglich could not have motivated the officers' actions in the barbershop.

We reach the same conclusion with respect to Chief Alcala. In his deposition, Chief Alcala testified that he did not know that Mr. Morfin was a supporter of Stiglich. *See* Alcala Dep. at 100. Mr. Morfin has not presented any evidence that calls this testimony into question.[16]

---

[15] Indeed, Officer Kovats testified that he did not even know who Mr. Morfin was when he entered the barbershop. *See* Kovats Dep. at 29.

[16] Furthermore, even if Chief Alcala were aware of Mr. Morfin's support of Stiglich, we already have concluded that there is not sufficient evidence in this record to support a conclusion that

(continued...)

We reach a contrary conclusion, however, with respect to Kevin Pastrick. As noted above, there is evidence in the record that Kevin Pastrick was present at the barbershop when Mr. Morfin was arrested and played a central role in the officers' decision to arrest him. There was additional testimony that, while Kevin Pastrick was in the barbershop, he was on the telephone with other individuals involved in his father's campaign. Indeed, Kevin Pastrick testified that one of the reasons that he was at the barbershop was to protect his father's interests. *See* Kevin Pastrick Dep. at 37. As well, there is evidence in the record that Kevin Pastrick wished to see those present at the barbershop, who were opposed to his father's re-election, removed from the premises. *See* Crawford Dep. at 59 (testifying that, after French was arrested, Kevin Pastrick reported to a party over his cellular phone that "we got French"). Finally, the record reflects that, after Mr. Morfin was arrested, Kevin Pastrick made several derogatory comments about Mr. Morfin. *See* Shaffer Dep. at 47 ("Kevin Pastrick said . . . in his opinion that [Mr. Morfin] was a low life and a thief."); *id.* at 55 (testifying that Kevin Pastrick told him that "Curtis French was there to tamper with the machines and that Rick Morfin was aware of the fact and that he was there to destroy evidence"). We believe that this is sufficient evidence from

---

[16] (...continued)
Chief Alcala condoned, or failed to intervene to stop, the allegedly unlawful arrest of Mr. Morfin. Consequently, even if Chief Alcala may have been motivated to take some action against Mr. Morfin, there is not sufficient evidence in the record to conclude that such action was taken.

Additionally, because Mr. Morfin's only claim against the City of East Chicago is predicated on Chief Alcala's involvement, we do not believe that the City can be held liable for any of the allegedly unconstitutional actions taken by Kevin Pastrick or the arresting officers.

which a jury could conclude that Mr. Morfin's support of Stiglich motivated Kevin Pastrick's involvement in the arrest of Mr. Morfin. We therefore reverse summary judgment in favor of Kevin Pastrick on Mr. Morfin's First Amendment claim.

## Conclusion

For the foregoing reasons, we reverse the judgment of the district court as to the liability of Officer Kovats, Officer Arcuri, and Kevin Pastrick with respect to Mr. Morfin's Fourth Amendment false arrest claim and remand for further proceedings; we affirm the judgment in favor of Chief Alcala and Officer Anderson on this claim. We reverse the judgment of the district court with respect to Officers Kovats and Arcuri on Mr. Morfin's excessive force claim and remand that claim for further proceedings. We also reverse the district court's judgment in favor of Kevin Pastrick on Mr. Morfin's First Amendment claim and remand that claim for further proceedings; we affirm the district court's judgment in favor of Officer Kovats, Officer Arcuri and Chief Alcala with respect to Mr. Morfin's First Amendment claim. Finally, we affirm the judgment of the district court with respect to all claims against the City of East Chicago.[17] With respect to those claims on which we reversed the district court's judgment, Circuit Rule 36 shall apply. The parties shall bear their own costs in this court.

AFFIRMED IN PART; REVERSED
AND REMANDED IN PART

---

[17] "[B]ecause this decision reinstates . . . federal claims, on remand the district court should entertain" those state law claims over which it has supplemental jurisdiction. *Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998).

A true Copy:
            Teste:


                                            _____
                                            *Clerk of the United States Court of*
                                            *Appeals for the Seventh Circuit*